v. City of St. Pete. First up, Mr. Hicks. May it please the Court, I'm Mark Hicks. I represent the City of St. Pete Beach. The plaintiffs in this case cannot and did not prove that there was a permanent and continuous traversing of plaintiff's own property by members of the general public for which the City can be blamed or had an active encouragement to have the public on that property. Let me set the stage first of all. First, three lots down from the city's own, I mean from the plaintiff's own property, there's a 277-room hotel, the Don Cesar Hotel, and a beach. And people are allowed to come down onto that beach and use the beach. And people do wander onto Block M, undoubtedly. But Block M is one thing. The plaintiff's property is three lots down the road. So there you have an influx of people who are allowed to come down on the hotel's beach, and they do wander around. Okay, so what did we do about that? Can I ask you just a quick question just to make sure I sort of unpack your first statement? So you don't deny that if the city had authorized or granted, in effect, a license to continuously traverse, that might be a taking, or that, in fact, a jury could conclude that there was continuous and systematic traversing, whatever we're going to call it. But you're really sort of pushing on the causation point? Yes. Well, also, the law is what the law is. You know, Florida's not real clear on it other than if there's a taking. So we go to the Nolan decision, there was a jury instruction on that, that if you actively promote that the general public goes onto the property. And we don't claim this is a jury question because it's got to be a very high standard. You can't hold cities to liability over just passivity or inaction or just one or two little things. I thought they had a sign up that said public access. I thought they had a sign up that said public access was a city seal. No, they don't. And I'll get into that. There was evidence that they did. Well, Your Honor, what it said was there was a sign that said beach access right next to the northern border of Block M, next to the hotel. There's a path there that's been a little sand pass that's been there for 20 years. I thought the former city planning director testified he often went to Block M Beach as a private citizen because he thought it was a public beach. People were coming and going over Block M and the beach parcel engaged in normal business beach activities every time he went. Well, Your Honor, here's what the evidence really does show. No, no. I thought that was the testimony. Was that not the testimony of the former? I don't believe so. And if it's former, it's got to be 20 years ago. Because what we have No, no, no, no, no. He was the former official 20 years ago, but he testified as to things that had happened recently. Your Honor, there was testimony that persons go down that path to the beach, which they're allowed to be at at the Mean High Watermark. There's 300 people in the subdivision that also live there that are allowed to use the beach. They're allowed to use the beach access path all the way down to the water's edge to the Mean High Watermark. That drives people away from going between people's homes. Now, what else do you have? Well, during that path down there on the beach, he tried to ask the whifflers to leave, and the police chased him away and threatened him with arrest. That's his testimony. The jury could have credited him. Your Honor, if you want to look, can I say one last thing about the path? No, no. Answer my question. On the Wiffle Ball tournament, Your Honor, the first time they had the Wiffle Ball tournament, the Wiffle Ball was supposed to be at the Don Cesar Hotel and also at the Don Vista Center. It was held there. There were people that did wander over. However, everyone at that Wiffle Ball tournament was told by the city, and this is undisputed, that you're not to go across to Block M. Whatever police officer was there, we don't have any evidence that that police officer was on duty or was a private police officer. Yes, we do. We have the testimony of one of the property owners that the police chased him away and threatened him with arrest. Your Honor, the police officer could have been an off-duty cop. Nobody knew who hired the police, whether the city put that officer there. It doesn't matter. He's a police officer. All right, let's just assume you're right. No, no, don't. You're not going to win your appeal arguing with the testimony. The jury heard testimony that he went down there and tried to get the people off his property, and a police officer chased him away and threatened him with arrest. The jury could have credited that witness's testimony. That is what he said. So we take it as a fact. Okay, you take it as a fact that one police officer said he wasn't going to chase the... Of the city. No, of the city threatened the property owner with arrest if the property owner didn't stop trying to remove people from his property. Your Honor, Chet Chmielewski did say that about his property, but... And the jury was entitled to believe him. Yes. Okay, so it's a fact. It still doesn't become a jury question. It becomes a fact for purposes, our purposes, and reviewing the sufficiency of the evidence. All right, well, let's talk about the sufficiency of the evidence and whether one or two instances like that make a real difference and show an act of encouragement by the city that the public is supposed to go on that property. What we have here is, first, go to a beach access sign. The beach access sign sends people straight down to the beach along the northern edge of Block M next to the hotel. Right then and there, the city put up a big sign saying, on the left side of that path, private property subdivision owners of the Don Cesar subdivision. And so you're not supposed to go to the left when you go down that little path. So the city affirmatively did something. At the wiffle ball tournament, not only did the city say to everyone involved, you're not supposed to go on to Block M, but after that one time when Mr. Chmielewski complained about everything, they stopped holding the wiffle ball tournament down there. They now held it in subsequent years on the front side of the hotel. Let me ask you this. Was there testimony that the city actually rezoned the Chmielewski's private property as a public park? No, absolutely not. There was no testimony. Nobody testified to that. No. I'm not asking you if it happened. I rezoned. There's no rezoning. I can tell you what happened. Counsel. Okay. Counsel, when I ask you if there was evidence, don't tell me what you think the facts were. Was there evidence presented to the jury that the city rezoned their private property as a public park? No. Rezoned. That wasn't painful, was it? No, your honor. Now, if he agrees with you, that's fine. If he disagrees with you, we'll have to determine from the record which one of you is right. Yes, your honor. Can I talk about the zoning for a moment? Let me ask you just to set the stage. You've been using this buzz phrase, active encouragement. Where does that come from? What is the standard? What is the causation standard that we are to apply here? It seems like everybody's sort of all over the place about what the causation standard is. I don't know whether it ought to be sort of ordinary tort proximate cause or something else. There's some fourth amendment instruction that the other side wants to use. But what's the standard for causation that we ought to be looking at so that we'll know what to test the evidence against? Well, your honor, I think everybody took from the Nolan case, the U.S. Supreme Court case of Nolan. When you allow people to walk to and fro and traverse property, that can be a taking. But the Nolan case says it's got to be with the encouragement of the city. In other words, the city has to cause it. Okay, and if you're giving me a couple of instances where the city participated in a wiffle ball tournament, yes, for charity, and a police officer may have done something, that doesn't set the stage for a permanent continued traversing of that property. Especially, you know, it's one thing to have people go on Block M, which is the big block. It's another thing to go on the private property of Mr. Chmielewski. And if people did go on that private property, that's one instance. That's just, did the city set up a scheme or a plan or in any way actively promote the general public to go across Block M and on to Mr. Chmielewski's property? And the answer is absolutely not. And it's not even a jury question. Well, so that's, I mean, to me, just sort of historically speaking, I think of causation as a jury question, sort of squishy, fact-bound. It is the sort of thing that juries decide. And then your difficulty, I think, is that there may not be sort of an official policy or a smoking gun, but there's a little plus, a little plus, a little plus, a little plus, a little. The renovation of the center, the sign, the wiffle ball tournament, the sea oat planting, the moving of the furniture, all of it, which adds up to more than nothing. Certain, you know, certainly something the jury could conclude. No, it doesn't. It doesn't add up to encouragement by the city. There are obviously, the homeowner himself testifying that he saw people from time to time crossing his property. Well, 300 homeowners in that subdivision are allowed to cross his property, are allowed to put picnic tables, whatever they want, not tables, not picnics on it, on the beach property. Yeah, but it's not like kindergarten. You don't have to share with everybody. You can decide who you share with. And the subdivision had decided that the owners of homes in that particular subdivision only could use block M. Not only block M, but plaintiff's beach parcel also. That's fine, but they didn't decide that anybody outside the subdivision. No, but I'm making a bigger point. When you put a house three lots down from the Don Cesar Hotel with 277 rooms, you have a subdivision that allows those people to use the property, to use the beach. Those people being subdivision homeowners. That's correct. And their relatives, whoever's staying in their house, they all come to the beach together and they enjoy the beach now. What does the city deserve what they can get? Is the city supposed to card everybody, come down to the beach with them? No, but the city does not have to have a city manager testified, quote, if there was an event at the Don Vista that gave people the right to use block M as it relates to Mr. Chmielewski's property as part of block M. That was his testimony, is the official position of the city. Your honor, there was an internal memo. No, I'm not talking about the internal memo. I'm talking about his testimony at trial as to what your client's position was. I'm quoting from the record. No, but I don't believe that's the official position of the city. He's testified it was. Well, that's his opinion. I think you've got to look at what the city actually did, what the facts were. Did the city, you know, you could find that they had a wiffleball tournament. You can also encourage weddings on the beach there. We don't know who had the weddings. The weddings were in the Don Vista Center. There's no evidence that any permit was issued to go down to the beach. The Don Vista Center, the city had a right to promote, the right to promote people to come there. It was a cultural center. It's literally right behind the Chmielewski house and just over a little bit. So, hold on. You said we didn't know, and this is to Judge Karn's point. Didn't Mr. Chmielewski testify that the city, in fact, gave, told people that they could use block M for weddings? Whether or not that was true, didn't he testify that the city told people they could use block M for weddings? I don't believe so. I think the testimony is they could use the Don Vista Center. I thought the city manager testified 126 at 220 and 221. People who use the Don Vista building could use block M for a wedding. You're disavowing the city manager's testimony at TROP. Your Honor, the judge in this case ruled that because the city owned the Don Vista Center, people that were enrolled in Don Vista Cultural Center had a right to use block M. There was no testimony that there was a general policy by everyone that just because we had the Don Vista Center, anyone in the public could come down to that beach and set up on that beach. There was no such thing. But could they? Was that allowed to the public to use block M except for this part that was owned by the Chmielewski's? There are obviously people that use the beach for the weddings, for weddings. But we claim it's not because of what the city did. There were no permits for weddings on the beach issued by the city. Did they try to issue permits for weddings anywhere else inside the city limits? Oh, yes. Oh, yes. For all the beach. All public beaches we issued permits. All right. We let you run over a little bit. All right, Mr. Turner. Yes, Your Honor, I'm pretty much going to rest on my brief. I think you, Your Honors, from your questions obviously have understood our position. Let me take you to an issue. And I think that's a wise position to take. But let me take you to an issue that hasn't been discussed yet. And that is having paid $1.4 million in change. Whether the city is entitled to have title on the property transferred to the city. Here's the concern. And I've looked at this hard. And I've looked at it again hard. Here is the problem. Your expert, the only evidence as to the value, your expert took the value of their house and the beach property that they owned after the quiet title action. And then took it after the city effectively granted access to it. Yes, sir. And he took the value of the property and subtracted the two. Yes, sir. And said what they've suffered from the take and the severance damages to the house lot is $1.4 million. And he didn't testify as to what the property was worth before and then subtract from it an easement. He subtracted from it the entire property being gone. Yes, sir. I understand the court's point. So you've taken the money. Why shouldn't they get what they've been forced to buy from you? Several reasons, if the court please. I understand the court's point. The appraiser effectively believed that the value of the property was the right to exclude the public. That is the number one. And it had no value beyond that. It's your expert and it's your theory. And you took the money and you didn't object. And therefore, you've bought into it that the property has no value once the easement is recognized. And so you have no basis for not giving them the valueless property unless you just have this masochistic desire to pay property taxes. Well, yes, sir. The judge found below that they had not moved it. Let me just take a moment and I'll explain the point, if the court please. I understand the court's point. The cases, and a lot of them come out of California, actually. The cases say that this is a damaged proceeding. It is not an equitable proceeding. And there's no pleadings here ever sought for any title. They're free to bring whatever action they want to seek clarification. This was an easement taken. Now, the fact that the easement is taken and there's a residual fee interest of no value in effect doesn't mean you get the title to the property. You still only have taken an easement. So the easement is what they would be if you wanted to talk about what they're entitled to. They're entitled to a right of passage or some sort of recorded easement. Except you don't get that in an eminent domain case, in an inverse case, because it effectively is an easement on its own record. We frankly don't have a problem giving them, and I've already offered to give them, some sort of a written, if they want to record it, write a passage or something like that. We don't have a problem giving them title to the property. I don't, a title I think they're not entitled to it because they didn't take the title. They didn't take the . . . They lost, in effect, he says, the title to the property because he took that away when he gave the second appraisal. The second appraisal amount took it away as though it no longer belonged to them. He said that you have taken the market value of the property through the easement. Judge, the easement can take the market value. There's a case in Florida, 191 Southern 2nd. I will provide that for supplemental authority. I think I may have cited in my brief where the court said that you can take an easement which takes the value of the property because the easement can be so extensive. Here, all we had was the right to exclude the public. That's the value of that property. It's a buffer property. So I don't understand. Why not give it to them if the property is valueless? They're going to charge you property taxes. Something is going on. You're contradicting the position of your expert that you put forward and of your theory of the case or you're acting irrationally. I don't believe you're acting irrationally. You see some value in that contrary to what your expert's opinion is beyond the easement. There's a residual value in the property. The fact that it has residual value of some kind, I don't know what that is. He didn't testify to any residual value. He testified basically the second appraisal, the value of that rectangular property, beach access property and beach property is zero. That's correct. And there's severance damages to the remainder also. But the point is that the, and I misused the word value, it has some worth as the owner of the property because I don't know what might come next in terms of on my part. He didn't consider that. He didn't subtract from the 1.4 what might come next. The difference is, I can only tell you the difference is that you can have a residual fee that's worthless. That doesn't mean I deed the title. And if they wanted to take the residual fee, they could condemn the residual fee. They should have condemned it. They condemned an easement. Now, I don't know what the value is. I don't know why it is. I just know they didn't seek it in the pleadings. How do we know they have an easement based on this record and this judgment? How does the public know they have a prescriptive easement after 20 years of continuous use, which is what they would have claimed here? They would have claimed the same easement. That's what we've got. We've got an incipient public easement. I think I break this. This is what they have taken. They've just, instead of, we're waiting. If we'd waited 20 years, we'd have lost the right to do this. So we had to bring it within time. But they've got an easement. I frankly don't have a problem if they brought a proper claim or, you know, if they brought a counterclaim. The judge below denied it and said you haven't sought it. I'm sorry. I'm sorry you didn't finish that first clause. I don't have a problem if they brought a. If they had brought some action and asked and pled for this action. You would have conceded they were entitled to it. I would have conceded they would have been entitled to an easement had they brought. Not an easement. I'm talking about title. I don't believe they're entitled under case law. I'll be glad to furnish the cases out. Here's the problem. It is inequitable. You're talking about this not equitable proceeding. Every proceeding nowadays is an equitable proceeding in that the court shouldn't enter a judgment that's inequitable. It is inequitable. I propose and I want you to tell me why I'm wrong. For them to pay the full value of the entire property and not get the property. On the theory that they've taken it from you. You can't both say they took it from me and they didn't take it from me. They took an easement which rendered the property valueless but they did not take the remaining. Judge, the best I can do is furnish you in supplemental authority if the court will permit me the case system and I think there's several from California where this problem has been addressed and the court just says that you don't do it in this proceeding. They're afraid that they didn't seek equitable relief and so that's why. I don't know why the court denied. The court said you don't have any authority. You haven't decided anything. You haven't complied with the rules. So I don't get into that. Could the city refile the case when it goes back down? I believe they could file a correct request. Now whether the court would say you haven't planned it, I don't know. I certainly don't have a problem working to get them what, if they want something of a record, it would be proper in the case. That means nothing. I have no problem with doing what's proper appropriate and keeping the principles of the republic but that doesn't answer the question of whether or not you have a problem with them getting title. I do with the title, the word title. I don't have a problem getting the interest. I understand and we'll let y'all do supplemental letter briefs and if that's the law, that's fine the law but if that's not the law, it is inequitable for you to collect as though you sold the property to them and then not give them the property. What was the most egregious thing that the city did that shows that they acted the way that you took this case? From beginning to end and from beginning to end, your honor, zoning, the planning director testified and he was the planning director, by the way, in 2003 to 2010 during this time period and so he testified, yes, they've zoned at public park. The testimony is clear here from every angle that they wanted this property to be used for the, as a benefit to the center. The center would be able to, I guess, be more successful, be better for the public. I don't know what they're, they can charge more fees in the center but they wanted it to have that, so they started off a policy for the center to do this. Then they opened it up completely. They took down all the barriers in the parking lot so people could park there. They put in meter parkers so that they could use the beach. There's no reason to put meter parkers there, parking there. Of course, that was not on this property, was it? No, nobody, it was the only place they could use it. They cleared this sidewalk for people to walk down right next to our house. We're only one house down from the center. They cleared out this mini park that was overgrown and they made it very nice and they opened the path up and they widened the path that was there for the property users and they  They didn't put up any signs, your honor. Those signs were old signs. Mrs. Chmielewski testified. These were old signs that the Homeowner Association, which was an informal group, had put up years ago. Saying what? Saying private property. Yeah, but I thought they put up a sign about beach access. They did, absolutely. They put up, after the renovation, they put up signs at their mini park. The mini park is across the pathway from the center. It's all the old developer's residence of the subdivision. Did the general public use that block M except for your client's park? Were they allowed? No. They couldn't go there? No, this was That's the subdivision people could use. Absolutely, it was for subdivision and what has happened here is they converted this through their encouragement from day one. From day one, opening this property up to the public and encouraging the public to go there, very much like what happened in this Presley case. Mapping, there's a map there that they put out for access to be at this point. All right, I'm looking at a color map. The mini park is on the northern edge. If you drew a line on the block M, it would almost run into the northern edge of the mini park. Where was this sign? It was right there at the end, right there, along the side of the mini park. Just to the front of it and to the north of it. All right, there's a trail that starts outside of block M and then curves back into block M. It comes from the mini park. They opened that up. They even put a little concrete walkway there and they opened it up and you can walk right there down to the beach and of course go across block M and that's what people did. That's what the planning director said he did. But the actual trail goes in through block M before you get to the beach. Okay. Thank you. I see my time is up. Thank you. Thank you. We'll hear now from Ms. Martin. May it please the court. My name is Christina Martin and I'm here representing Amicus Cure Pacific Legal Foundation. The Florida Constitution's Takings Clause, which Florida courts have interpreted as extensive with the Federal Takings Clause, requires that government pay just compensation when it causes a physical per se taking. I want to address a question that you raised earlier, Judge Newsom, and that was what is the standard, the causation standard? The city suggests that it cannot be liable for a taking because it did not actively encourage by formally announcing to the public that they could use the Chmielewski's Beach. But once again, the law makes no such demand. Rather, under Arkansas Game and Fish Commission, government can create an easement one of two ways. One, either through intentionally taking an easement, or two, by acting in a manner that the foreseeable outcome would be to take an easement. Either standard is satisfied in this case. The latter sounds to me sort of like Paul's graphy, you know, approximate, right? You intend to cause the foreseeable consequences of your actions, or some such. The court in Arkansas Game and Fish cited to a case called Ridgeline, which also appears in the city's brief. And that, the Supreme Court explained that that actually has a pretty good explanation differentiating between the standard in negligence actions and the standard in takings. And in takings, you can demonstrate an easement was taken by the government if it would be a direct, natural, or probable result of the government's actions. So it's similar, but the case explains some nuances between the two. So you're saying there is an easement taken, but not a simple easement? Yes, Your Honor. Just to address what the Chief Judge raised earlier, I would just say that the testimony from the appraiser made the presumption that the beach parcel would continue to be used as a public beach. And the problem is if you give fee simple over to the government, that they could then, say, build a facility there. They could use it for a variety of other uses not contemplated by the appraiser. And I would just say that in my experience, you can take almost the entire value of property just by giving over an easement. For instance, in Beyer, it's not in any of the briefs, but in the Beyer case out of the third DCA, the property owners there had a nine-acre island in the Florida Keys that became almost worthless because it was left with only a token value because the government took a conservation easement of that property. But you say it could take almost the full value of the property, but not quite. So the appraiser was wrong when he testified, take the entire value of the property. Well, the appraiser's testimony is using rough estimates. So I think that— He said, we're going to take the whole property and assume it's gone. Sure, sure. But I mean, I think it's fair to say that a de minimis value of $100 or whatnot isn't really going to measurably affect the just cause. You really don't think it's a de minimis value, do you? I actually do think it's probably a de minimis value. So they're paying, God knows in Florida, what the property tax is on this parcel because it has a de minimis value and several thousand dollars a year in property tax is what you're willing to pay for nothing. Well, I think that once this case is concluded and it's deemed a public beach access over that parcel, that you have a very good case that he shouldn't be paid much of anything in property taxes. I don't think reappraisal requests are very good cases in the state of Florida. And I just want to make one more point on that, Your Honor, and that's that the takings law is very clear that the government is not allowed to take more than is actually needed. So they may want fee simple, but I don't think that satisfies the requirements of the takings clause. And that, for instance, Traylor Ranch versus City of Pompano Beach said a condemning authority exercising the power of eminent domain is not permitted to acquire a greater quantity of property or interest therein than is necessary to serve the public purpose for which the property is acquired. So the appraiser was wrong is the problem. My problem and concern, just so you understand, is not with how much they should have taken or the max they could have taken. My problem is the theory of the plaintiffs and they put forward the expert and they argued it and they got a jury verdict based on it was that the property is valueless. They've taken the whole thing. And now to say they didn't take the whole thing is not equitable. It may be too late, may not be part of this proceeding, but it's just wrong. Well, I would say that the city had the opportunity to offer evidence that the property would still have some remaining value after this easement was imposed. It's contrary to the city's interest. The city's interest is the property has nothing but $1.48 million and that's what we paid. Therefore, we get the property. It would have been against the city's interest to say it was really worth $2 million. So we don't get the property because we only paid $1.4. Go ahead. Well, I see that I'm out of time, but thank you, Your Honor. I would just ask that you affirm the lower court's decision. Thank you, counsel. We don't get many amica in addition to the parties. Usually we have to point one because the party's laid down in a case, but we appreciate you up here. I may please the court. In the Sarasota County case, the court said, this is the Florida Second District Court of Appeal. In the typical inverse condemnation action, and I'm quoting, the procedure is, quote, the landowner seeks to compel the county either to take full title to the property and pay just compensation or to purchase a limited interest in the property. In this case, easement was never a theory of the case. They went for the whole amount. They went to trial for the whole amount. The word easement was never used in the case, in the complaint, or anywhere else. And should the city get the property, obviously it's still subject to the deed restrictions of the subdivision. So the city does get something, but it's not going to, you know, if it doesn't get the property, they're going to sue the city again for the same thing. So it seems to me their entire theory was a taking under the Florida Constitution without just compensation when their only evidence is not easement, but full taking. It's valueless to them. And we're going to have to pay it if this court says so, then we get title to the property. So can I ask you a question? Because I certainly take Judge Karn's inequity point. I had the same unease about this, but if it was so obvious to everyone that this inequity would result, why didn't you make this argument before this passing reference in your? Well, no. We fought against inverse condemnation. Got it. We... I mean, there was a plan B, presumably, in the offing, right? I mean, if they win, then... Nothing that needed to be pleaded. We expected a not guilty. That's our... They didn't try to sue for an easement. They just said, we want the whole thing. You own the property, in essence, inverse condemnation. And so, okay, on post-trial motions, the judge denied our motion for new trial, motion for directive verdict. So we said, okay, then we need title to the property. I guess you could analogize your position on the procedure. I'm not sure this works, but you could analogize it to saying, in a criminal case, you plead not guilty. You don't have to plead not guilty. And if I'm convicted, the maximum sentence is 10 years until you're convicted. That's correct, Your Honor. When did you first raise this issue to get the deed? On post-trial motions. Post-trial, okay. Post-trial motions. And is it right or wrong that this was... Is it fair to call it a passing reference? Or was this something that was actually... Oh, no, no. No, we got involved on post-trial motions and drafted the post-trial motions with the trial lawyers, and this was... You know, it's not fair when the district court says that this was a single sentence in a post-trial motion, if any amount is awarded for the taking claim, the city requests that title, the pathway, and beach parcel be transferred to the city. There was more than that. Even if it was a short argument. I guess, just descriptively, was there more than that? No. I thought, well, that's the last... Nor did the court ask us to go out and do some more work on it, try to come up with something. I mean, the County of Sarasota... Well, never mind. The only thing I urge the court to do... Obviously, there's some testimony from Chmielewski and that the court picked from the record today that one could say, oh, well, this is all a jury question. But remember, this has to be applied to all cities and all beaches and all subdivisions. And how... If you take a sheet of paper and write down all the things the city did affirmatively to stop this, they were allowed to post signs on their property, private property, which they didn't do. We posted the sign at the north and at the south. Yes, we had a beach access sign. But people were allowed from the subdivision to channel their way down to the beach, not just walk through between houses. So, okay, if that had some bearing on the public because they happened to be there... But look at the Don Vista Center. Look at the parking lot. No hotel or beach parking. Only passes permitted that had to be on the dashboard of the car. Parking enforcement was there. If you could just make a list, you'll see that the city really did affirmatively all it could do to stop the public from going there. Thank you. Thank you. Let me correct y'all. There are actually two sentences in the 50B. The first, in the first section, in the alternative, the city moves for a new trial pursuant to Rule 59 are remitted to your and transfer of title. And then the last section, finally, if any amount is awarded for count to the city request that title of the pathway and beach parcel be transferred to the city. So, beginning and end. You know, the district court said something about didn't cite any authority for that. I can't cite you any authority for that, but it sure seems like it's not a privileged thing. But here's what I'd like for you to do on the supplemental letter briefs, if you would. So, if we could have the plaintiffs file one within seven days as to my concern and I think may or may not be shared by other members of the panel about why the city is not entitled to full title. And you can address the procedural part if you want to, but they didn't know they were going to have to pay damages until the verdict came in. And then have the city respond. Is seven days enough for you? You seem hot to trot and ready to go on the issue. No, no, I'm talking about on this issue. It doesn't, it may not take you seven days is what I'm saying. But how about it? Counsel, is seven days to respond to his? Okay, all right. Judge, can I ask one more? Sure. Yeah, that'll be fine. Just include it in that letter and that way opposing counsel have an opportunity to respond to it of seven days. And Tony's got a worried look because I didn't tell you how long it can be. It'd be 10 double spaced pages at most. Anything else I'm overlooking, Tony? Okay, fine. Thank you. Appreciate it. Next case is Smith versus Confreda.